IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JUSTIN WILLIAM VANDERA,

    Plaintiff,

 v.

BRIAN FOSTER, SGT. TRITT, LT. TRITT,
LT. LARSON, CPT. HAYNES, SGT. KOOTZ,
JONATHAN S. PAWLYK, DR. VAN BUREN,
CO BIKOWSKI, DR. SCHMIT, MISS HALPER,
JON E. LITSCHER, JOHN DOE, JANE DOE,
and SGT. BOUZACK,[1]

    Defendants.

OPINION & ORDER

17-cv-15-jdp

---

JUSTIN WILLIAM VANDERA,

    Plaintiff,

 v.

SGT. BULLZACK, SGT. KOOTZ,
JONATHAN S. PAWLYK, CO BEAHM,
CO BROCKMAN, LT. TRITT, CO BUKOWSKI,
BRIAN FOSTER, JON E. LITSCHER, RHU
SUPERVISOR, RHU PROGRAMS SUPERVISOR,
JOHN DOE, and JANE DOE,

    Defendants.

OPINION & ORDER

17-cv-40-jdp

---

Plaintiff Justin W. VanDera, a state of Wisconsin inmate confined at the Waupun Correctional Institution, brings two separate lawsuits about prison officials' handling of his thoughts of self-harm and his placement in observation cells in December 2015 and January

---

[1] I have amended the caption to include as a defendant Sgt. Bouzack, who VanDera names in the body of his complaint as a defendant.

2016. The court has already concluded that VanDera qualifies for *in forma pauperis* status and has collected an initial partial payment of the filing fee for both of these cases.

Because VanDera's allegations in his two complaints are so related, he could have brought all of these allegations in the same lawsuit.[2] It makes little sense to force VanDera to pay two separate filing fees for these cases, so I will *sua sponte* combine his two complaints into case no. 17-cv-15 and dismiss case no. 17-cv-40. I will direct the clerk of court to apply his payments in case no. 17-cv-40 to case no. 17-cv-15, and inform the DOC that VanDera no longer owes the filing fee for case no. 17-cv-40.

The next step in this case is to screen both of VanDera's complaints. In doing so, I must dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. Because VanDera is a pro se litigant, I must read his allegations generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam).

After reviewing the complaints with these principles in mind, I conclude that VanDera may proceed on Eighth Amendment deliberate indifference claims against several defendants who were involved in placing him in an unsanitary cell and later allowing him to harm himself. I will dismiss other defendants because VanDera fails to adequately explain how they violated his rights.

---

[2] *See* Fed. R. Civ. P. 20(a)(2) ("Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.").

ALLEGATIONS OF FACT

Plaintiff Justin W. VanDera is an inmate at the Waupun Correctional Institution. VanDera suffers from mental illness. On December 30, 2015, VanDera had thoughts of self-harm. He was escorted to a holding cell, where he refused to be interviewed by security staff. He was then taken to an observation cell. Several other inmates in the Restricted Housing Unit (RHU) had to be placed in observation cells that day, and "it was beginning to irritate" staff.

Sgt. Bullzack decided to place VanDera in cell A-103, which he and other officers referred to as the "poop cell," because there was feces on the window, door, walls, and floor and in the food trap. There was also blood and dirt "infesting" the cell. For the next six days, defendants Pawlyk, Beahm, Brockman (all correctional officers), Lt. Tritt, Sgt. Bullzack, Sgt. Kootz, and John and Jane Doe checked on VanDera. VanDera would show them the feces, blood, and dirt in the cell, but despite them saying that they would talk to a supervisor, he was not moved out of his cell for six days. He also says that defendant Bukowski, "RHU Supervisor" and "RHU Programs Supervisor," along with some of the defendants listed above, intentionally "placed" him in those conditions. VanDera says he was unable to "maintain a[n] adequate and nutritional diet" over this time, causing him pain, dizziness, and lack of sleep. Eventually he was moved out of the cell.[3]

---

[3] VanDera also states that he received a conduct report when he tried to send samples of the feces, blood, and dirt in the mail to his mother. But because he explicitly lists the types of claim he wishes to bring in his complaint, and does not include any claim regarding these actions, I will not consider a claim based on these facts. VanDera is free to amend his complaint to explain whether he wishes to bring claims about these events, so long as he explains which defendants were involved in violating his rights.

On January 31, 2016, VanDera had thoughts of self-harm, so he told defendant Sgt. Tritt about his thoughts. VanDera was taken to a strip cell to talk to a supervisor, and eventually he was taken back to cell A-103. VanDera told defendant Pawlyk that he would not agree to be housed there unless it was cleaned. The cell was cleaned before he was placed back there.

VanDera asked defendant Sgt. Tritt to be placed in full security restraints because he felt like slamming his head against the door, walls, and window. Sgt. Tritt relayed that request to defendant Lt. Larson, who passed it on to defendant Cpt. Haynes, who in turn passed it on to defendant Miss Halper, the on-call psychologist. Halper denied the request for restraints. All of these defendants knew that VanDera had a history of harming himself by slamming his head against the wall, and that restraints had been used in the past to prevent this.

Once he was in observation, VanDera started slamming his head against the door, wall, and window, splitting his head open and causing him to bleed. Sgt. Tritt noticed this but walked away. VanDera continued to slam his head against his cell over the next three hours. Defendants Jonathan Pawlyk, Bikowski,[4] Sgt. Kootz, John Doe, and Jane Doe all saw VanDera harm himself over the three-hour period yet did nothing to help him.

VanDera pushed his emergency call button, which went to defendant Kootz, and Kootz said that he would let his supervisor know about the request. But VanDera did not receive any medical attention until days later.

---

[4] It is possible that defendant "Bikowski" from case no. 17-cv-15 is the same person as defendant "Bukowski" from case no. 17-cv-40. When the state explains whether it will be accepting service on behalf of these defendants, it should clarify whether it is clear to the DOC that VanDera is referring to the same person.

At some point, VanDera talked to defendant Dr. Van Buren about inmates harming themselves while in observation. Van Buren told VanDera, "Inmates are allowed to harm themselves, because that is what they do and why they are in observation in the first place."

ANALYSIS

VanDera brings Eighth Amendment claims against defendant prison officials for placing him in a filthy cell and later failing to protect him from acts of self-harm.

Under the Eighth Amendment, prisoners are guaranteed humane conditions of confinement for their health and safety. *Rice ex rel. Rice v. Corr. Med. Serv's*, 675 F.3d 650, 664 (7th Cir. 2012) ("Incarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.'"). For example, prisoners must receive adequate food, clothing, and shelter, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), including sanitary conditions of confinement, *see, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("exposure to human waste carries particular weight in the conditions calculus"), *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste").

A claim that a prisoner's conditions of confinement violate the Eighth Amendment requires the prisoner to prove two things: (1) the adverse condition is sufficiently serious; and (2) the prison official has been deliberately indifferent to that condition. *Rice*, 675 F.3d at 664-65. For an adverse condition to be sufficiently serious, it must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and it must deprive the prisoner of a "minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834.

VanDera was in the allegedly unsanitary cell for only six days, but he alleges that the conditions were so bad that he was unable to eat, and ended up suffering pain, dizziness, and lack of sleep from the hunger. I conclude that the conditions were serious enough to support an Eighth Amendment claim.

VanDera alleges that he raised the cell conditions with defendants Pawlyk, Beahm, Brockman, Lt. Tritt, Sgt. Bullzack, Sgt. Kootz, and John and Jane Doe, but that none of them did anything to help him besides say that they would talk to a supervisor. He also says that defendant Bukowski, "RHU Supervisor," and "RHU Programs Supervisor" "placed" him in those conditions. It is unclear whether VanDera means that the various officers lied to him when they said they were going to talk to supervisors, or whether they did talk to the supervisors, but that the supervisors did nothing. Perhaps he is not sure exactly which set of defendants actually disregarded his requests.

I will allow him to proceed against all of these defendants, but at summary judgment or trial, VanDera will need to provide evidence explaining how each defendant responded to his situation. One presumes that correctional officers do not have the authority to move a prisoner out of a cell without talking to a supervisor first, so if some of these defendants did pass along his complaints in an effort to help him, those officials would likely not be liable under the Eighth Amendment.

Because VanDera does not provide the names of the "RHU Supervisor" and "RHU Programs Supervisor," I will treat them as "John Doe" defendants along with defendant John and Jane Doe. At the preliminary pretrial conference that will be held later in this case, Magistrate Judge Stephen Crocker will explain the process for VanDera to use discovery

requests to identify the names of the Doe defendants and to amend the complaint to include the proper identities of these defendants.[5]

VanDera also alleges that during a later stint in the observation cell, prison staff failed to prevent him from slamming his head against the wall. The Eighth Amendment guarantees that prison officials "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–527 (1984)). To state an Eighth Amendment failure to protect claim, a prisoner must allege that (1) he faced a "substantial risk of serious harm" and (2) the prison officials identified acted with "deliberate indifference" to that risk. *Farmer*, 511 U.S. at 834; *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005).

VanDera alleges that he suffers from severe mental illness and thoughts of self-harm led him to slam his head against the wall. That is sufficient to show a substantial risk of serious harm. He also alleges that defendant Halper denied the use of restraints despite knowing his history of self-harm, that defendants Sgt. Tritt, Pawlyk, Bikowski, Kootz, John Doe, and Jane Doe failed to do anything to get him help, and that Kootz did not get him help after he called on the intercom. I conclude that VanDera may proceed on claims against each of these defendants for ignoring the risk of harm facing him.

---

[5] VanDera also states that he wishes to bring procedural and substantive due process claims regarding defendants' actions, but he does not explain how his right to any particular procedure here was violated, so there is no reason to consider such a claim. Nor can he bring a substantive due process claim because the Eighth Amendment is a more specific type of claim covering his allegations. *See, e.g., Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks omitted)).

VanDera may not proceed against any of the other defendants at this time regarding his self-harm claims. Some of his allegations do not show that defendants were deliberately indifferent to him. For instance, he states that defendants Larson and Haynes both passed along VanDera's request to be placed in restraints, which was ultimately denied by defendant Halper. But neither Larson nor Haynes were deliberately indifferent by passing along a medical request up the chain to a medical professional; they were entitled to rely on Halper's decision. *See e.g., McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013).

He also says that defendants Larson, Haynes, and Lt. Tritt (who I take to be a different official from Sgt. Tritt) "maliciously allowed him to harm himself," Dkt. 1, at 54, but he does not explain how they did this. It is unclear whether VanDera is talking about Larson's and Haynes's actions in transmitting his request for restraints, or some other events, but his allegations are too vague to support self-harm claims against these defendants.

VanDera says that at some point, defendant Dr. Van Buren told him, "Inmates are allowed to harm themselves, because that is what they do and why they are in observation in the first place." But VanDera does not explain when Van Buren made this statement, and it does not appear that he is saying that Van Buren made this statement while he was in the middle of his self-harm episode. So I conclude that he has not shown that Van Buren was deliberately indifferent to the risk of harm he faced.

Finally, VanDera names Sgt. Bouzack,[6] Brian Foster, Dr. Schmit, and DOC Secretary Jon Litscher as defendants in one or both of his complaints, but he does not provide any allegations about how these defendants violated his rights. VanDera remains free to amend

---

[6] Similar to defendants "Bikowski" and "Bukowski," it is possible that defendants "Bullzack" and "Bouzack" are the same person, but because VanDera does not state any claims against "Bouzack," I will dismiss that defendant.

his complaint to explain how any of defendants discussed above acted with deliberate indifference to him, but for now I will dismiss them from the case.

ORDER

IT IS ORDERED that:

1. Case nos. 17-cv-15 and 17-cv-40 are combined into one lawsuit. The clerk of court is directed to docket the complaint from case no. 17-cv-40 in case no. 17-cv-15, dismiss case no. 17-cv-40, apply plaintiff Justin W. VanDera's payments from case no. 17-cv-40 to case no. 17-cv-15, and inform the DOC that plaintiff no longer owes the filing fee for case no. 17-cv-40.

2. Plaintiff is GRANTED leave to proceed on the following claims:

    - Eighth Amendment claims against defendants Pawlyk, Beahm, Brockman, Lt. Tritt, Sgt. Bullzack, Sgt. Kootz, John Doe, Jane Doe, Bukowski, "RHU Supervisor," and "RHU Programs Supervisor" for subjecting him to an unsanitary cell.

    - Eighth Amendment claims against defendants Miss Halper, Sgt. Tritt, Jonathan Pawlyk, CO Bikowski, Sgt. Kootz, John Doe, and Jane Doe for allowing plaintiff to harm himself.

3. Defendants Lt. Larson, Cpt. Haynes, Dr. Van Buren, Sgt. Bouzack, Brian Foster, Dr. Schmit, and Jon Litscher are DISMISSED from the case.

4. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaints and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 40 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

5. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

6. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

7. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and the defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered April 17, 2017.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge